UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICKY HEAD**, <br> Plaintiff, <br> v. <br> **CAROLYN W. COLVIN**, Acting Commissioner of Social Security <br> Defendant. | Case No. 4:17-cv-00536-YGR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> RE: Dkt. Nos. 15, 18 |

Plaintiff Ricky Head filed this action seeking judicial review of the Administrative Law Judge's (the "ALJ") determination that plaintiff is not disabled under the Social Security Act (the "Act"). Plaintiff challenges the ALJ's failure to articulate specific and legitimate reasons supported by substantial evidence for rejecting the medical opinions offered by examining providers Dr. Wozniak, Ms. Reyes, and Dr. Stone, in determining claimant's Residual Functional Capacity ("RFC"), namely that plaintiff (i) suffers from marked social and concentration impairments and (ii) has not responded to medication. Plaintiff also challenges the ALJ's discrediting of certain evidence in the treatment notes and selectively relying on records indicating improvement and intact daily activities. Based thereon, plaintiff argues that the Court should grant summary judgment in plaintiff's favor and award benefits or, in the alternative, remand to the ALJ for further proceedings.

Now before the Court are cross-motions for summary judgment. (Dkt. Nos. 15, 18.)[1]

---

[1] Plaintiff filed his motion for summary judgment on June 19, 2017. (Dkt. No. 15.) The Commissioner filed a cross-motion on July 17, 2017. (Dkt. No.1.) Plaintiff filed his reply on July 31, 2017. (Dkt. No. 19.)

1

Having considered the papers submitted and the administrative record in this case, and for reasons set forth below, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion is **GRANTED**.

## I. PROCEDURAL BACKGROUND

On March 5, 2013, plaintiff filed an application for a period of disability and disability insurance benefits with the Social Security Administration (the "SSA"), claiming that he had been disabled since May 15, 2009. (Dkt. No. 12, Administrative Record ("AR") at 278-290.) The claim was denied on August 30, 2013, and again upon reconsideration on February 4, 2014. (*Id.* at 153-59, 162-68.)

Plaintiff filed a timely appeal and requested a hearing with an ALJ on March 14, 2014. (*Id.* at 169.) The ALJ held a hearing on September 15, 2015, and a supplemental hearings at which plaintiff appeared on January 7, 2016. (*Id.* at 12.) In a decision dated January 29, 2016, the ALJ found that plaintiff was not disabled under the Act. (*Id* at 15-22.)

On February 4, 2016, plaintiff requested review of the ALJ's decision by the Appeals Council which denied plaintiff's request, finding "no reason under our rules to review the [ALJ] decision." (*Id.* at 1-6, 10-11.)[2] Accordingly, the ALJ's decision became the final decision of the Commissioner of the SSA. (*Id.* at 1-6.) Thereafter, plaintiff initiated the instant action, seeking judicial review. (Dkt. No. 1.)

## II. LEGAL STANDARD

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211,

---

[2] Such decision included an implicit finding that the ALJ did not abuse her discretion, make a legal error, or render a decision unsupported by substantial evidence. (*Id.* at 1.)

2

1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679.

The SSA employs a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantial work activity if her work involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment (or combination of impairments) that meets the duration requirement of 20 C.F.R. § 404.1509,[3] she is not disabled pursuant to the regulation. Otherwise, the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 (providing the applicable standard for medical equivalence of impairments). If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the

---

[3] The duration requirement specifies that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" unless it is "expected to result n death." 20 C.F.R. § 404.1509.

3

ALJ proceeds to Step Four.

Before reaching Step Four, the ALJ must determine the claimant's Residual Functional Capacity (the "RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the RFC to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. § 404.1520(g). If the claimant can "make an adjustment to other work," she is not disabled under the regulation. Otherwise, she is found to be disabled.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled and eligible for disability insurance benefits. A summary of her decision follows below.

### A. Step One

At Step One, the ALJ credited plaintiff's testimony and found that he had not engaged in substantial gainful activity since May 15, 2009, the alleged onset date. (AR at 18.)

### B. Step Two

At Step Two, the ALJ determined that the plaintiff suffered from the following severe impairments: "depression, anxiety, psychosis, degenerative disk disease of the lumbar spine, and substance abuse . . . ." (*Id.*) The ALJ found that these impairments "cause more than minimal impediments to the claimant's ability to perform basic work activities." (*Id.*)

### C. Step Three

At Step Three, the ALJ found that plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

4

C.F.R. Part 404, Subpart P, Appendix 1." (*Id*.) The ALJ reasoned that "[n]o medical expert has opined that the claimant's impairments . . . meet or equal the criteria of any of the listed impairments. A review of the record supports a finding that they do not. The state agency consults have also opined that they do not." (*Id*.) Specifically, the ALJ found that the criteria in "paragraph B" of Listing 12.06 (anxiety and obsessive-compulsive disorders) and "paragraph C" of Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 were not satisfied. (*Id*. at 18-19.)

### D. Pre-Step Four: RFC Determination

The ALJ determined that plaintiff had the RFC to perform "medium work" under 20 C.F.R 404.1567(c) and 416.967(c) with the following modifications: "simple routine tasks with no more than occasional contact with co-workers, supervisors, and the general public." (*Id*. at 19.) In so finding, the ALJ indicated that she was "not persuaded" by the statements of plaintiff's treating psychiatrist Dr. Steven Wozniak and treating therapist Jenna Reyes. The ALJ stated three reasons for declining to give Dr. Wozniak's opinion "significant weight." (*Id*. at 21.) First, Dr. Wozniak failed to address whether "claimant's symptoms would continue were he to remain sober." (*Id*. (Dr. Wozniak failed to "eliminate[] claimant's substance abuse as a possible source of his symptoms . . .") Second, the ALJ found that Dr. Wozniak's opinion regarding plaintiff's social and mental deficits were contradicted by treatment records which (i) "repeatedly note claimant's attention and concentration as 'intact,' and that note him to be alert, aware, and appropriate" and (ii) describe "remarkably full" social activities for a person "claiming such severe anxiety that [he] cannot leave [his] home." (*Id*. at 20.) Third, the ALJ found Dr. Wozniak's opinion that plaintiff's psychotic symptoms had not responded to medication to be contradicted by the treatment records and the opinions of other doctors. (*Id*. at 21.)

In addition, the ALJ discredited plaintiff's statements "that he is socially isolated, and tends to avoid others" because the "record does not demonstrate that claimant cannot engage in superficial social interactions . . . ." (*Id*. at 18.) In discrediting plaintiff's testimony, the ALJ considered that claimant attended concerts and had many friends. (*Id*.)

### E. Step Four

1          At Step Four, the ALJ found that the claimant was unable to perform his past relevant
2   work as a home attendant and nurse assistant. (*Id.* at 21.) The ALJ acknowledged that claimant's
3   psychiatric limitations preclude performance of past relevant work. (*Id.*)

### F.  Step Five

At Step Five, the ALJ asked the vocational expert to determine whether "jobs exist in the national economy for an individual with the claimant's age, education work experience, and residential functioning capacity." (*Id*. at 22.)  The vocational expert testified that, in light of all of those factors, several jobs existed that were available to plaintiff (*e.g.* metal sorter, production helper, and hand packager.) The ALJ found that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*).  On such bases, the ALJ found that claimant was not disabled as defined under the Act.  (*Id.*)

## IV.  DISCUSSION

As noted above, plaintiff challenges the ALJ's failure to articulate specific and legitimate reasons supported by substantial evidence for rejecting the medical opinions offered by examining providers Dr. Wozniak, Ms. Reyes, and Dr. Stone, namely that (i) plaintiff suffers from marked social and concentration impairments and (ii) plaintiff's psychotic symptoms have not responded to medication. Plaintiff also challenges the ALJ's discrediting of certain evidence in the treatment notes and selectively relying on records indicating improvement and intact daily activities.  The Court addresses each challenge.

### A.      Physician Opinions

#### 1.       Standard of Consideration

In determining whether a claimant is disabled within the meaning of the Act, the ALJ must consider all medical opinion evidence. *Tommasetti v. Astrue,* 533 F. 3d 1035, 1041 (9th Cir. 2008). Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the opinions of treating physicians generally accorded the most weight. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are three types of medical opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222

(9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than opinions of examining physicians). The rationale for giving greater weight to a treating physician's opinion is that he or she is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted).

The applicable regulation ordinarily requires the agency to give a treating physician's opinion "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [she] errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *See Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir.1996).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . .'" *Id.* (quoting *Orn*, 495 F.3d at 633) (emphasis supplied). The opinion of a non-examining physician "cannot by itself constitute substantial evidence" justifying the ALJ's rejection of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir. 1990).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social

7

Security] Administration considers specific factors in determining the weight it will be given." *Orn*, 495 F. 3d at 631. "Those factors include the length of the treatment relationship and the frequency of examination by the treating physician; and the nature and extent of the treatment relationship between the patient and the treating physician." *Id.* (internal quotations and citations omitted.) "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided, the consistency of the medical opinion with the record as a whole, and the specialty of the physician providing the opinion." *Id*.

2. Dr. Steven Woziak

Dr. Woziak has treated plaintiff at the South of Market Mental Health since October 2012. (AR at 890.) Plaintiff takes issue with the ALJ's decision to assign more weight to the opinions of the non-examining state consultants than to Dr. Woziak. Here, the ALJ provided three "specific, legitimate reasons based on substantial evidence in the record" for discounting the opinions of Dr. Wozniak. *See Molina*, 674 F.3d at 1111. First, the ALJ explained that Dr. Wozniak failed to eliminate plaintiff's substance abuse as the cause of plaintiff's symptoms. The ALJ cited Dr. Wozniak's treatment notes which indicate that plaintiff's marijuana use is ongoing. (AR 848 (indicating that patient's substance abuse or dependence is not in remission); *see also id.* at 21, 420.) Substantial evidence in the record confirms plaintiff's continuing substance abuse issues. (*Id*. at 381 (new patient evaluation indicating current marijuana use), 424 ("psychosis complicated by regular heavy caffeine and marihuana [sic] use"), 427 (San Francisco Department of Public Health Assessment indicating that plaintiff "states he began using marijuana at 13 years old. He became a daily pot smoker in 2000 . . .") 852 ("smokes MJ daily") and 859 (Dr. Stone report indicating that plaintiff smokes multiple marijuana joints per day).) The ALJ noted that this ongoing substance use left "open the question as to whether or not the claimant's symptoms would continue were he to remain sober." (*Id*. at 21.) Contrary to plaintiff's first assentation that no substance abuse diagnosis appears in the record, Dr. Wozniak completed the "Substance Abuse or Addiction" section of his October 15, 2012, form report. (AR at 848.) This form report contains an explicit instruction that the Substance Abuse or Addiction section should only be completed "[i]f

you have diagnosed the patient with substance abuse or substance dependence." (*Id.*) Accordingly, the ALJ found that because Dr. Wozniak failed to "eliminate[] the claimant's substance use as a possible source of his symptoms" his opinion "cannot be given significant weight." (*Id.*)

Second, the ALJ found that Dr. Wozniak's opinion that claimant's "social and concentration deficits are so severe, that the claimant cannot adequately perform in a workplace environment" conflicted with treatment records which indicate less severe social and concentration deficits. (*Id.* at 20-21.) Plaintiff's criticism of the ALJ's articulated basis fails in light of the ALJ's citations to treatment records which illustrate the conflict between Dr. Wozniak's opinions and those of the state agency consultants and even treating psychotherapist Dr. Stone. With regard to social deficits, the ALJ specifically cited to Dr. Stone's medical records from August 14, 2015, which indicate that plaintiff has several friends and "feels positively about spending time with [the] 18-year old [son of a neighbor] and encouraging him to stay away from drugs and trouble. Therapist reinforced and support client's prosocial behavior and activity level. Client responded well and appears positive . . . ." (*Id.* at 852.) Dr. Stone's medical records also indicated that Head planned to attend a concert along with this 18-year-old boy. (*Id.*) The ALJ noted that this was "certainly not the sort of activity one would expect from a person claiming such severe anxiety that they cannot leave their home." (*Id.* at 20.) With regard to concentration deficits, the ALJ discussed and cited other portions of Dr. Stone's records which indicate that plaintiff conveyed "linear thoughts." (*Id.* at 852.) Similarly, the ALJ quoted treatment records which describe plaintiff's "attention and concentration as 'intact,' and that note him to be alert, awake and appropriate." (*Id.* at 21, 382.) These treatment records further reveal "no word finding difficulties and no difficult in answering questions." (*Id.*) The ALJ then contrasted this evidence with specific portions of Dr. Wozniak's opinion which posited that plaintiff suffered from "extreme social isolation" and "extremely impaired concentration," (*id.* at 419, 846), and found Dr. Wozniak's opinions "deeply at odds with the claimant's record" (*id.* at 21). This analysis provides a second basis for finding that the ALJ satisfied her burden to provide legitimate reasons for discounting Dr. Wozniak's opinions here, and therefore, the ALJ's decision in this regard does

9

1   not warrant reversal. Again, contrary to plaintiff's claims, as noted above, the ALJ specifically
2   contrasted Dr. Woziak's opinion that claimant's psychotic symptoms had "not responded to
3   antipsychotic medications . . . including Latuda" (*id*. at 890) with the opinions of other medical
4   experts and doctors indicating that claimant responded positively to medication, including Latuda.
5   (*See Id*. at 811, 851.)

Third, the ALJ compared Dr. Woziak's opinion that claimant's psychotic symptoms had "not responded to antipsychotic medications . . . including Latuda" (*id*. at 890) with the opinions of other medical experts and doctors indicating that claimant had responded positively to medication. Specifically, the ALJ cited to evidence in the record which indicates that, contrary to Dr. Wozniak's opinion, claimant's symptoms have been at least partially responsive to medication. (*Id*. at 811 (increased dose of Klonopin "managing [plaintiff's] symptoms well"), 851 (Dr. Stone report noting that plaintiff successfully changed medications from Zyprexa to Latuda, appears to be feeling better, "MSE [Mental Status Evaluation] casually dressed, alert and oriented . . . cooperative, fluent, goal directed, no psychosis not suicidal or homicidal, mood 'ok' affect euthymic, impulse control good, insight good . . . Mood improved . . . .").)

The ALJ's articulation as set forth above satisfies her burden to provide legitimate reasons for discounting Dr. Wozniak's opinions.[4] Accordingly, the ALJ's decision in this regard does not warrant reversal. Plaintiff's arguments to the contrary fail.

### 3. Jenna Reyes, M.F.T.

Ms. Reyes is a therapist who treated claimant every two-to-four weeks from 2012 to 2015. (*Id*. at 435.) Plaintiff avers that Ms. Reyes collaborated with Dr. Woziak in completing a Mental Functional Assessment of plaintiff dated March 27, 2013 (the "Mental Functional Assessment"). (*Id*. at 420.) Defendant points out that the record is unclear as to whether Ms. Reyes actually

---

[4] Plaintiff also suggests in passing that the ALJ erred in failing to consider the *Orn* factors in determining the weight given to Dr. Woziak's opinion. *See Orn*, 495 F.3d 631. However, plaintiff does not specify which factors the ALJ allegedly ignored, or why consideration of these factors would result in a different outcome. Plaintiff does not mention this argument in his Reply brief. The Court declined to address a argument which appears to have been abandoned or not fully developed.

10

participated in or concurred with this report because the signature line indicates she was "unable to sign – on vacation till [sic] May 2013." (*Id*. at 420.) Plaintiff does not address this issue in his reply brief.

In any event, the ALJ's rejection of the purportedly joint Mental Functional Assessment is supported by the same specific and legitimate reasons and substantial evidence discussed above. In assigning little weight to Dr. Wozniak's opinions, the ALJ specifically referenced a statement submitted by Dr. Wozniak on claimant's behalf "which was also signed by Jenna Reyes, M.F.T., who also participated in the claimant's care." (*Id*. at 21).[5] The ALJ noted that all of these "statements convey the same basic message," namely that plaintiff's social and concentration deficits are so severe that he cannot perform in a workplace environment. (*Id.*) Therefore, it is reasonable to surmise that the ALJ intended her rationale for giving little weight to this "same basic message" to apply not only to Dr. Woziak but also to Ms. Reyes, who apparently concurred with Dr. Wozniak's opinion that plaintiff's social and concentration deficits are so severe that he cannot perform in a workplace environment. Such an analysis satisfies the ALJ's burden to provide legitimate reasons for discounting Dr. Reyes' opinions here. Accordingly, the ALJ's decision in this regard does not warrant reversal.

4. Dr. Myrna Stone

Dr. Stone took over plaintiff's psychotherapy treatment in April 27, 2015. (*Id*. at 703.) Plaintiff contends that the ALJ erred in failing to consider Dr. Stone's opinion or give specific reasons for rejecting her opinion. According to plaintiff, Dr. Stone and Dr. Wozniak completed a Mental Disorder Assessment of claimant dated August 14, 2015 (the "Mental Disorder Assessment"), which indicated that plaintiff suffered from marked limitations in several functional areas. (*Id*. at 845-48.) Plaintiff claims that the ALJ incorrectly referred to the Mental Disorder Assessment as being completed only by Dr. Wozniak.

Plaintiff does not persuade. First, although the Mental Disorder Assessment lists Dr. Stone

---

[5] It is reasonable to assume that the ALJ's reference was to the Mental Functional Assessment because this is the only document in the record which appears to be completed by Dr. Wozniak and Ms. Reyes.

11

as claimant's therapist, it does not appear that Dr. Stone actually signed the report. Second, the report appears to be only in Dr. Wozniak's handwriting. Third, plaintiff attributed the Mental Disorder Assessment solely to Dr. Wozniak when faxing it to the SSA. (*Id.* at 845 (fax cover sheet titled "Mental Disorder Assessment by Steven Wozniak, M.D.".) The ALJ thus reasonably read the report as originating from Dr. Wozniak rather than Dr. Stone. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"). In any event, the alleged error is harmless because the ALJ's reasons for rejecting the Mental Disorder Assessment under the assumption that it was completed only by Dr. Wozniak are equally valid assuming *arguendo* that the report was jointly submitted. Notably, plaintiff fails to respond to any of these issues or even mention Dr. Stone in his rebuttal, suggesting that plaintiff concedes this argument fails. Therefore, the ALJ's decision in this regard does not warrant reversal.

### B. Selective Reliance on Records

Claimant argues that the ALJ erred in discrediting the treatment notes from plaintiff's providers and selectively relying on records indicating intact daily activities. Specifically, plaintiff points to treatment notes which show that plaintiff consistently isolated himself from other people and spent most of his time alone.

Plaintiff does not persuade. The district court's standard of review of the Commissioner's decision is a "highly deferential" one. *Valentine v*, 574 F.3d at 690. The decision must be affirmed if it was supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

Here, the ALJ cited substantial evidence in the record supporting her decision to discredit the statements of plaintiff's treating providers, including claimant's daily living activities and social functionality (attends concerts, enjoys spending time with 18-year old son of a neighbor, and has several friends) (*see id.* at 851-52); concentration (linear thoughts, can keep track of

appointments and manage affairs, attention and concentration intact, no difficulty in answering questions) (*see id.* at 382, 852), and responsiveness to medication ("[i]ncreased dose [] managing his symptoms well . . . .") (*see id.* at 811, 851). Further, as discussed above, the ALJ articulated specific and legitimate reasons supported by substantial evidence for giving little weight to the opinions of plaintiff's treating providers. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d at 1198. Plaintiff makes no showing that the ALJ failed to consider all medical opinion evidence. *See Tommasetti,* 533 F. 3d at 1041. At most, plaintiff presents contrary medical evidence and invites the Court to weigh this evidence and overturn the ALJ's decision. The Court declines because "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Thomas*, 278 F.3d at 954.

**V. CONCLUSION**

For the foregoing reasons, the Court **DENIES** plaintiff's motion and **GRANTS** defendant's cross motion for summary judgment. No later than seven (7) days from the date of this Order, the parties must file a proposed form of judgment, approved as to form by claimant.

This Order terminates Docket Numbers 15 and 18.

**IT IS SO ORDERED.**

Date: August 8, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**